ARTHUR I. APPLETON, JR., PETITIONER *v*. COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 7717–10.  Filed November 1, 2010.

Asserting it has a vital interest in a key aspect of this case, M filed a motion to intervene pursuant to Rule 1(b), Tax Court Rules of Practice and Procedure, and under Fed. R. Civ. P. 24. *Held*: M's interest does not satisfy the "direct, substantial, and legally protectable" requirement of Fed. R. Civ. P. 24(a)(2). *Held*, *further*, because (i) P has raised the issue in which M asserts an interest as a matter central to his case and presumably the issue will be fully vetted during the course of these proceedings, and (ii) M's intervention could result in trial complications as well as delay the resolution of the issue in which M asserts an interest, M will not be permitted to intervene pursuant to Fed. R. Civ. P. 24(b)(2). *Held*, *further*, as an alternative to intervention, M will be permitted to file an amicus curiae brief.

*Randall P. Andreozzi*, *Edward Doyle Fickess*, *Ryan M. Murphy*, and *Teia M. Bui*, for petitioner.
*Barry J. Hart*, for proposed intervenor.
*Justin L. Campolieta*, for respondent.

OPINION

JACOBS, *Judge*: Asserting that it has a vital interest in a key aspect of this case, the Government of the U.S. Virgin Islands (movant) filed a motion to intervene pursuant to Rule 1(b). Petitioner has no objection to movant's proposed intervention; respondent does.

Unless otherwise indicated, Rule references are to the Tax Court Rules of Practice and Procedure, and section references are to the Internal Revenue Code as amended for the years at issue. At the time he filed his petition, petitioner resided in the U.S. Virgin Islands.

461

## *Background*

Petitioner, a U.S. citizen, was a bona fide resident of the U.S. Virgin Islands (Virgin Islands) for all years at issue (i.e., 2002, 2003, and 2004). Petitioner (i) filed territorial income tax returns with the Virgin Islands Bureau of Internal Revenue (BIR) for 2002, 2003, and 2004 pursuant to section 932(c)(2), and (ii) claimed he qualified for the gross income exclusion provided by section 932(c)(4) and therefore did not have to file Federal income tax returns or pay Federal income taxes for such years. The BIR audited petitioner's Virgin Islands territorial income tax returns for 2002, 2003, and 2004 and proposed no adjustments.

Respondent subsequently audited petitioner's 2002, 2003, and 2004 Virgin Islands territorial income tax returns and on November 25, 2009, issued petitioner a notice of deficiency, determining the following Federal income tax deficiencies and additions to tax:

*Additions to tax*

| Year | Deficiency | Sec. 6651(a)(1) | Sec. 6651(a)(2) | Sec. 6654 |
|------|-----------|-----------------|-----------------|-----------|
| 2002 | $283,555 | $35,563.73 | $39,515.25 | $9,045.50 |
| 2003 | 789,518 | 147,943.58 | 164,381.75 | 20,370.53 |
| 2004 | 280,241 | 56,728.35 | 63,031.50 | 8,030.86 |

On April 1, 2010, petitioner filed a petition in this Court for redetermination of the deficiencies and additions to tax determined by the Internal Revenue Service (IRS), asserting, inter alia, that the period of limitations for assessing tax had expired. On May 26, 2010, respondent filed an answer to the petition asserting, inter alia, that the period of limitations for assessing tax was still open. On June 18, 2010, movant filed its motion to intervene.

## I. *The Virgin Islands*

Although part of the United States, the Virgin Islands are a separate and distinct taxing jurisdiction. Congress established the "mirror tax system" as the tax law of the Virgin Islands. Act of July 12, 1921, ch. 44, sec. 1, 42 Stat. 122 (codified as amended at 48 U.S.C. sec. 1397 (2006)). Under the mirror tax system, the Virgin Islands uses the Internal Revenue Code with "Virgin Islands" effectively substituted

for any reference to the "United States" (and vice versa). See *Danbury, Inc. v. Olive*, 820 F.2d 618, 620 (3d Cir. 1987). As the law developed, the provisions of the Internal Revenue Code have been made applicable to the Virgin Islands so long as the specific section to be applied is " 'not manifestly inapplicable or incompatible' with a separate territorial income tax." *Chi. Bridge & Iron Co. v. Wheatley*, 430 F.2d 973, 976 (3d Cir. 1970) (quoting 48 U.S.C. sec. 1421i(d)(1) (1964)).

The provisions applicable for 2002, 2003, and 2004 under which individuals file income tax returns and pay tax in the Virgin Islands were enacted as part of the Tax Reform Act of 1986, Pub. L. 99–514, sec. 1274(a), 100 Stat. 2596, and amended in the Technical and Miscellaneous Revenue Act of 1988, Pub. L. 100–647, sec 1012(w), 102 Stat. 3530. Virgin Islands residents were generally exempted from Federal income tax obligations if they met the requirements of section 932(c)(4): [1]

(4) RESIDENTS OF THE VIRGIN ISLANDS.—In the case of an individual—
  (A) who is a bona fide resident of the Virgin Islands at the close of the taxable year,
  (B) who, on his return of income tax to the Virgin Islands, reports income from all sources and identifies the source of each item shown on such return, and
  (C) who fully pays his tax liability referred to in section 934(a) to the Virgin Islands with respect to such income,

for purposes of calculating income tax liability to the United States, gross income shall not include any amount included in gross income on such return, and allocable deductions and credits shall not be taken into account.

Thus, an individual who satisfied the three requirements of section 932(c)(4) and incurred income tax obligations to both the United States and the Virgin Islands could satisfy his reporting and payment requirements by filing only with, and paying tax only to, the Virgin Islands. If the individual failed to meet any of these requirements, he was required to file a Federal income tax return with the IRS. See S. Rept. 100–445, at 315 (1988). Consequently, an individual failing to satisfy any of the three requirements of section 932(c)(4)

---

[1] Sec. 932(c)(4)(A) was amended by the American Jobs Creation Act of 2004, Pub. L. 108–357, sec. 908(c)(2), 118 Stat. 1656. The amendment, which is effective for tax years ending after Oct. 22, 2004, changed "at the close of the taxable year" to "during the entire taxable year".

could be required to file an income tax return and be liable for taxes in both the United States and the Virgin Islands.

## II. *The Virgin Islands Economic Development Program*

To encourage economic development in the Virgin Islands, Congress has explicitly permitted the Virgin Islands government to reduce certain taxes. Section 934(b)(1) provides that the Virgin Islands may reduce taxes on "income derived from sources within the Virgin Islands or income effectively connected with the conduct of a trade or business within the Virgin Islands."

Pursuant to this grant of authority, the Virgin Islands government enacted several investment incentives, including the Virgin Islands Industrial Development Program (referred to by the parties as the economic development program or EDP), currently codified at V.I. Code Ann. tit. 29, secs. 701–726 (1998 & Supp. 2010). Intended to promote growth and the development and diversification of the Virgin Islands' economy, the EDP granted certain industrial development benefits to companies that do business in the Virgin Islands. See V.I. Code Ann. tit. 29, sec. 701 (1998). Qualifying companies receive substantial benefits including: A 90-percent exemption on local income taxes, a 90-percent exemption on the taxation of dividends, and a 100-percent exemption on gross receipts taxes.

## III. *Respondent's Notice of Deficiency*

Attached to respondent's notice of deficiency was a Form 4549–A, Income Tax Discrepancy Adjustments, which set forth the basis for the income tax deficiencies and additions to tax. Although respondent acknowledged that petitioner was a resident of the Virgin Islands at the close of 2002, 2003, and 2004 (thus meeting the first requirement of section 932(c)(4)), Form 4549–A stated:

You do not, however, qualify for the gross income exclusion under section 932(c)(4) of the Internal Revenue Code (I.R.C.) for any of those taxable years. During each of the taxable years 2002, 2003, and 2004, you actively participated in an arrangement that lacks economic purpose and economic substance that was created to improperly claim a 90% credit against your income tax liabilities in a scheme similar to those described in *Notice 2004–45 Meritless Position Based on Sections 932(c)(4) and 934(b)*, resulting in your failure to properly report and identify the source of each

item of income shown on the return of income tax you filed with the USVI for each of those years.

Notice 2004–45, 2004–2 C.B. 33, was issued to advise taxpayers that the IRS intended to challenge "highly questionable, and in most cases meritless, positions" of certain U.S. citizens who claim to be residents of the Virgin Islands in order to claim substantial tax benefits (including the above referenced 90-percent income tax credit) of the Virgin Islands EDP.

Respondent asserts that since petitioner did not satisfy the second and third requirements of section 932(c)(4), petitioner was required to file Federal income tax returns in 2002, 2003, and 2004 and pay any tax reported thereon. Because petitioner did not file Federal income tax returns for 2002, 2003, and 2004, respondent asserts that the 3-year period of limitations on assessment provided by section 6501(a) has not yet begun to run. Thus, according to respondent, petitioner's 2002, 2003, and 2004 tax years remain open.

Petitioner, in contrast, asserts that the section 6501(a) period of limitations for assessing Federal taxes began to run when he filed his Virgin Islands territorial income tax returns with the BIR. Petitioner never agreed to an extension of the period of limitations as provided in section 6501(c)(4). Thus, petitioner argues, the period of limitations on assessment has expired.

Movant agrees with petitioner with respect to the expiration of the section 6501(a) period of limitations on the assessment of Federal taxes. Movant maintains that respondent's position threatens the Virgin Islands' taxing autonomy and fiscal sovereignty and significantly impairs the BIR's ability to administer the tax law of the Virgin Islands. Movant thus seeks to intervene for the purpose of protecting its rights and interests regarding the period of limitations issue.

## Discussion

The sole issue before us is whether movant may intervene in this matter.[2] In general, our Rules do not provide for

---

[2] In *Cincinnati Transit, Inc. v. Commissioner*, 55 T.C. 879 (1971), affd. 455 F.2d 220 (6th Cir. 1972), we held that a third party to whom a notice of deficiency had not been issued may not join in the proceeding as a party petitioner. However, we recognized there "is a sound distinction between permitting a third party to 'intervene' or file an amicus brief to protect its interests,

Continued

third-party intervention.[3] In the absence of an express rule, Rule 1(b) provides that the Court "may prescribe the procedure, giving particular weight to the Federal Rules of Civil Procedure to the extent that they are suitably adaptable to govern the matter at hand." See *Intermountain Ins. Servs. of Vail, L.L.C. v. Commissioner*, 134 T.C. 211, 215 (2010); *Estate of Proctor v. Commissioner*, T.C. Memo. 1994–208.

Movant relies on rule 24 of the Federal Rules of Civil Procedure (Fed. R. Civ. P.) which governs third-party intervention in much of the Federal court system. Movant asserts that it is entitled to intervene as a matter of right under Fed. R. Civ. P. 24(a)(2) as well as under the permissive intervention rules of Fed. R. Civ. P. 24(b)(2). Movant indicates that if permitted to intervene, it will file a motion for summary judgment asserting that respondent is time barred from assessing deficiencies under section 6501(a) with respect to petitioner's 2002, 2003, and 2004 tax years.

## I. *Intervention Under Fed. R. Civ. P. 24(a)(2)*

Movant first argues that it should be permitted to intervene as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2), which provides that a court must permit anyone to intervene who:

(2) claims an interest relating to the property or transaction that is the subject of the action, and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

A review of this Court's jurisprudence reveals that the Court has never recognized intervention of a third party as a matter of right pursuant to Fed. R. Civ. P. 24(a)(2). Because we find that movant has not satisfied the requirements of Fed. R. Civ. P. 24(a)(2), we need not and do not

_____

which we think would be discretionary at best under these circumstances, and permitting a party to join as a party petitioner in a proceeding to redetermine someone else's tax liability." *Id.* at 883.

[3] There are limited exceptions for third-party intervention; namely: (1) Rule 216(a), permitting intervention by the Pension Benefit Guaranty Corporation and/or the Secretary of Labor in certain retirement plan actions; (2) Rule 225, permitting interventions in actions with respect to sec. 6110 written determinations open to public inspection; (3) Rule 245(a), permitting intervention by tax matters partners in actions for readjustment of partnership items brought by another partner or partners; and (4) Rule 325(b), permitting intervention by the nonelecting spouse with respect to claims for relief from spousal joint and several liability.

decide herein whether Fed. R. Civ. P. 24(a)(2) applies to proceedings in this Court.

To intervene pursuant to Fed. R. Civ. P. 24(a)(2), the proposed intervenor must: (1) Timely file an application, (2) show an interest in the litigation, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not adequately protected by the parties to the action. See *Kaliski v. Bacot (In re Bank of N.Y. Derivative Litig.)*, 320 F.3d 291, 300 (2d Cir. 2003); *Kleissler v. U.S. Forest Serv.*, 157 F.3d 964, 969 (3d Cir. 1998). The Supreme Court has held that Fed. R. Civ. P. 24(a)(2) requires a "significantly protectable interest." *Donaldson v. United States*, 400 U.S. 517, 531 (1971). Specifically, the intervenor's interest must be "direct, substantial, and legally protectable." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, 922 F.2d 92, 97 (2d Cir. 1990); see *New Orleans Pub. Serv., Inc. v. United Gas Pipe Line Co.*, 732 F.2d 452, 464 (5th Cir. 1984) (en banc).

An economic interest in the outcome of the litigation standing alone is not sufficient to support a motion to intervene. *Mountain Top Condo. Association v. Dave Stabbert Master Builder, Inc.*, 72 F.3d 361, 366 (3d Cir. 1995); see, e.g., *United States v. Alcan Aluminum, Inc.*, 25 F.3d 1174, 1185 (3d Cir. 1994) ("Some courts have stated a purely economic interest is insufficient to support a motion to intervene."); *New Orleans Pub. Serv., Inc. v. United Gas Pipeline Co.*, *supra* at 464 ("it is plain that something more than an economic interest is necessary."). Moreover, "An interest that is remote from the subject matter of the proceeding, or that is contingent upon the occurrence of a sequence of events before it becomes colorable, will not satisfy the rule." *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, *supra* at 97; see also *Kleissler v. U.S. Forest Serv.*, *supra* at 972 ("Nonetheless, the polestar for evaluating a claim for intervention is always whether the proposed intervenor's interest is direct or remote."). The determination as to whether the proposed intervenor's interest is sufficient to satisfy the "direct, substantial, and legally protectable" requirement is made on the basis of an examination of all the facts and circumstances present in the matter. See *Cascade Natural Gas Corp. v. El Paso Natural Gas Co.*, 386 U.S. 129, 133–134 (1967); *Kleissler v. U.S. Forest Serv.*, *supra* at 970.

Movant maintains that it has the requisite interest to intervene as a matter of right, asserting that respondent's determination both impinges on its sovereign authority to administer its own tax laws through the BIR and undermines movant's economic policies. Movant further asserts that respondent's position that the period of limitations on assessment of income taxes provided in section 6501(a) remains open for petitioner (and other similarly situated taxpayers) has caused a number of companies to leave the Virgin Islands, has undermined its economic development program, and has adversely impacted movant's tax revenues. We do not subscribe to this argument.

Resolution of the 3-year period of limitations issue will not undermine movant's taxing authority or discourage legitimate economic development in the Virgin Islands pursuant to movant's EDP. Regardless of the outcome of the 3-year period of limitations issue, movant will still retain the authority to offer and administer its economic development program. Movant's assertions relate to movant's economic interest (specifically the Virgin Islands' business climate) in the outcome of the litigation between petitioner and respondent; and as previously noted *supra* p. 467, an economic interest is not sufficient to permit intervention. Moreover, movant's interest in this proceeding (1) is remote from the subject matter of the controversy between petitioner and respondent (i.e., petitioner's participation in an activity which respondent alleges lacks economic purpose and economic substance), and (2) will be impaired and colorable only upon the occurrence of a sequence of events. See *Wash. Elec. Coop., Inc. v. Mass. Mun. Wholesale Elec. Co.*, *supra* at 97. Hence, movant's interest does not satisfy the "direct, substantial, and legally protectable" requirements of Fed. R. Civ. P. 24(a)(2). See *id.*

## II. *Intervention Under Fed. R. Civ. P. 24(b)(2)*

Alternatively, movant asserts it should be allowed to intervene pursuant to the permissive intervention rules of Fed. R. Civ. P. 24(b)(2), whereby a Federal or State government officer or agency may be permitted to intervene if a party to the litigation's claim or defense is based on: "(A) a statute or executive order administered by the officer or agency; or (B)

any regulation, order, requirements, or agreement issued or made under the statute or executive order." Movant posits that petitioner's case centers on sections 932(c) and 934(b), which under the mirror tax system are administered by the BIR. Movant argues that if its request to intervene is granted, the filing of a motion for summary judgment will not delay or obstruct the adjudication of the matter in this Court. Assuming arguendo that movant falls within paragraph (A) or (B) of Fed. R. Civ. P. 24(b)(2), movant has neither demonstrated that its participation as a party is necessary to advocate for an unaddressed issue nor shown that its intervention will not delay the resolution of this matter.

Intervention pursuant to Fed. R. Civ. P. 24(b) is left to the discretion of the Court. In *Estate of Proctor v. Commissioner*, T.C. Memo. 1994–208, we stated:

Under rule 24(b) of the Federal Rules of Civil Procedure (rule 24(b)) a trial court has discretion to permit intervention by third parties. Rule 24(b) also permits the trial court to restrict the scope of intervention by third parties and to condition such intervention in any manner it believes is necessary for the efficient conduct of the proceedings. Wright et al., Federal Practice and Procedure: Civil 2d, secs. 1913, 1922 (1986 & Supp. 1993). Federal courts generally consider the following factors when deciding whether to grant a party's motion to intervene: (1) Whether the presence of a third party in the proceeding will prejudice the original parties; (2) whether allowing intervention by a third party will unduly delay the adjudication; (3) whether the moving party is or may become a party to another proceeding in which the moving party's rights will be determined; or (4) whether there is some other adequate remedy available to the moving party. Wright et al., *supra* sec. 1913, at 379–388. Generally, once the court permits a third party to intervene in the proceeding, the intervenor is treated as an original party and has equal standing with the original parties, subject to any of the conditions the court may impose. See *Ross v. Bernhard*, 396 U.S. 531, 541 n.15 (1970).

Like other Federal courts, this Court may permit intervention where the ends of justice so require. *Id.*; see *Commissioner v. Revere Land Co.*, 169 F.2d 469, 479 (3d Cir. 1948), revg. 7 T.C. 1061 (1946); see also *Sampson v. Commissioner*, 710 F.2d 262 (6th Cir. 1983) (Tax Court has power to permit, in its discretion, intervention by persons or entities who have not been served with a notice of deficiency).

In its reply to respondent's objection, movant states: "the V.I. Government merely seeks this Court's interpretation of Section 6501(a) as it applies to *USVI residents* who filed, in

good faith, a return with the Bureau" and that this determination may be made via a motion for summary judgment. Movant takes the position that the filing of a territorial income tax return with the BIR by a resident of the Virgin Islands triggers the running of the period of limitations for both Virgin Islands and U.S. tax return filing purposes.

Petitioner, who is represented by counsel, has made the expiration of the section 6501(a) period of limitations a cornerstone of his case. In his petition, petitioner alleges that he properly and timely filed his 2002, 2003, and 2004 Virgin Islands territorial income tax returns with the BIR (a statement movant concurs in), that the BIR informed the IRS of petitioner's return information pursuant to information sharing agreements between the two agencies, and that the IRS' examination of petitioner's 2002, 2003, and 2004 tax years commenced well before the expiration of the period of limitations. The petition states: "The Commissioner spent *several years* examining Petitioner's 2002 through 2004 taxable years, including significant amounts of time with little or no examination activity, and *never requested an extension of the statutes of limitations for any of these years*." Further, the petition states: "The statute of limitations under I.R.C. § 6501 for the 2002, 2003 and 2004 taxable years had expired well prior to the time the Commissioner issued his Statutory Notice of Deficiency on November 25, 2009."

Petitioner has raised the period of limitations issue, and we presume the matter will be fully vetted during the normal course of these proceedings. For movant to participate in this case as a party solely to make an argument that petitioner has already identified as a matter central to his case would introduce a redundancy into the proceedings.

Adjudication of the period of limitations issue may require us to make factual determinations. Were we to grant the motion to intervene, movant would become a party to the proceeding in this Court and have the right to introduce documentary evidence, call its own witnesses, and cross-examine witnesses of the other parties. Such participation, as a practical matter, could result in trial complications as well as delay the resolution of the issue in which movant asserts

an interest. [4] Consequently, we shall deny movant's motion to intervene.

There is, however, another remedy (i.e., the filing of an amicus curaie brief) available to movant through which it may adequately represent its interest in the outcome of this case. Thus, as an alternative to intervention, we will permit movant to file an amicus curiae brief in order to enable us to view the matter from its perspective.

*An appropriate order will be issued.*

---

[4] In its supplement to the reply to respondent's objection to movant's motion to intervene, movant cites *Karr v. Castle*, 768 F. Supp. 1087 (D. Del. 1991), to support its position. That case involved the filing of a civil rights action by Karr, a former Delaware National Guard member, against Castle, the Governor of the State of Delaware, and various Delaware Army National Guard officers challenging the constitutionality of Karr's involuntary separation from military service. At issue was the validity of a National Guard Bureau regulation governing separation from service (i.e., whether the regulation failed to provide Karr with sufficient procedural due process). The United States moved to intervene in order to defend the constitutionality of the regulation inasmuch as the regulation was promulgated by the National Guard Bureau, a joint bureau of the U.S. Department of the Army and the U.S. Department of the Air Force. The United States asserted that its interest would, as a practical matter, be impaired by prosecution of Karr's lawsuit because of the potential stare decisis effect on future challenges to the regulations (i.e., declaring the regulations invalid would have a widespread effect upon the National Guard of the several States).

The court denied the United States' motion to intervene as of right pursuant to Fed. R. Civ. P. 24(a)(2), but granted permissive intervention under Fed. R. Civ. P. 24(b). The court found the validity of the regulation in question sufficient to give the United States an intent in common with the litigation. In so holding, the court found that intervention by the United States would "not unduly delay or prejudice the adjudication of the rights of the original parties".